Beneficial Homeowner Serv. Corp. v Heirs at Large of Ramona E. Thwaits (2020 NY Slip Op 03709)





Beneficial Homeowner Serv. Corp. v Heirs at Large of Ramona E. Thwaits


2020 NY Slip Op 03709


Decided on July 2, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 2, 2020

529722

[*1]Beneficial Homeowner Service Corporation, Appellant,
v
Heirs at Large of Ramona E. Thwaits, Deceased, et al., Respondents, et al., Defendants.

Calendar Date: May 19, 2020

Before: Lynch, J.P., Clark, Devine, Pritzker and Reynolds Fitzgerald, JJ.


Fein, Such & Crane, LLP, Rochester (John A. Cirando of D.J. & J.A. Cirando, PLLC, Syracuse, of counsel), for appellant.
Bartlett, Pontiff, Stewart & Rhodes, PC, Glens Falls (James R. Burkett of counsel), for respondents.



Clark, J.
Appeal from an order of the Supreme Court (Bruening, J.), entered January 29, 2019 in Essex County, which, among other things, searched the record and granted summary judgment to defendants.
In 2002, Ramona E. Thwaits (hereinafter decedent) borrowed a sum of money from plaintiff's predecessor in interest and executed a promissory note that was secured by a mortgage on certain real property in the Town of Jay, Essex County. In October 2009, after the mortgage had been assigned to plaintiff and after decedent had allegedly defaulted on the mortgage, plaintiff commenced an action to foreclose on the mortgage. In January 2011, during the pendency of the action, decedent passed away. Approximately 13 months later, without having sought substitution of a legal representative to act on behalf of decedent's estate (see CPLR 1021), plaintiff filed a notice with the Essex County Clerk's office to discontinue the action.
In 2013, plaintiff commenced a second mortgage foreclosure action, naming decedent as defendant. However, in March 2015, plaintiff filed a notice with the County Clerk's office, ostensibly discontinuing that action. Thereafter, in July 2015 and September 2015, plaintiff sent notices to decedent at the mortgaged property. In the notices, plaintiff purported to revoke its prior acceleration of the mortgage, de-accelerate the mortgage and reinstitute the loan as an installment loan.
In June 2016, plaintiff sent another notice to decedent at the mortgaged property. The notice, which was ultimately returned as undeliverable, stated that decedent was in default on her mortgage loan and that, if she did not pay the entire amount due and owing on the mortgage within 90 days, it "may commence legal action against" her. Thereafter, in November 2016, plaintiff commenced the instant mortgage foreclosure action, this time naming certain known heirs of decedent, as well as, among others, decedent's "heirs at large." The named defendants did not file an answer or otherwise appear in the action. Supreme Court subsequently appointed a guardian ad litem (hereinafter GAL) to represent decedent's unknown successors in interest. The GAL filed an answer on their behalf, asserting that the mortgage foreclosure action was barred by the statute of limitations.
In March 2018, plaintiff moved for, among other things, summary judgment foreclosing on the mortgage. The GAL opposed the motion on behalf of his clients and requested that Supreme Court "review the whole record and grant [s]ummary [j]udgment dismissing th[e action] as . . . time barred." Supreme Court determined that plaintiff had established its prima facie entitlement to summary judgment by proffering evidence of, among other things, its possession of the note and decedent's default on the mortgage. However, upon searching the record, Supreme Court found that the GAL had rebutted plaintiff's showing and established entitlement to summary judgment dismissing the complaint as untimely. Consequently, Supreme Court, among other things, granted defendants summary judgment dismissing the complaint. Plaintiff appeals, and we affirm.
"The six-year statute of limitations in a mortgage foreclosure action begins to run from the due date for each unpaid installment unless the debt has been accelerated; once the debt has been accelerated by a demand or commencement of an action, the entire sum becomes due and the statute of limitations begins to run on the entire mortgage" (Lavin v Elmakiss, 302 AD2d 638, 639 [2003], lv dismissed 100 NY2d 577 [2003], lv denied 2 NY3d 703 [2004] [citations omitted]; see CPLR 213 [4]; Bank of Am., N.A. v Luma, 157 AD3d 1106, 1106-1107 [2018]). After a lender elects to accelerate a mortgage debt, such election can "be revoked only through an affirmative act occurring within the statute of limitations period" (Lavin v Elmakiss, 302 AD2d at 639; see Specialized Loan Servicing Inc. v Nimec, 183 AD3d 962, 964 [2020]). To be valid and enforceable, de-acceleration notices, like acceleration notices, must be clear and unambiguous (see U.S. Bank N.A. v Creative Encounters LLC, 183 AD3d 1086, 1087 [2020]; Wells Fargo Bank, N.A. v Portu, 179 AD3d 1204, 1207 [2020]; Milone v US Bank N.S., 614 AD3d 145, 153 [2018], lv dismissed 34 NY3d 1009 [2019]).
It is clear that plaintiff's commencement of the October 2009 action accelerated the debt, thereby starting the six-year statute of limitations period, and that the instant action was commenced more than six years later in November 2016. Plaintiff, however, maintains that this action is timely because, after accelerating the debt in October 2009, it engaged in several affirmative acts that de-accelerated the debt — namely, filing notices to discontinue the 2009 action and the 2013 action and sending de-acceleration notices to decedent at the mortgaged property in July 2015 and September 2015. We are not persuaded.
With respect to the notices of discontinuance in the 2009 and 2013 actions, we note that we, as well as other Appellate Divisions, have held that the voluntary discontinuance of an action, without more, will not generally constitute an affirmative act that revokes a lender's election to accelerate a debt (see U.S. Bank N.A. v Creative Encounters LLC, 183 AD3d at 1088; Specialized Loan Servicing Inc. v Nimec, 183 AD3d at 964; Wells Fargo Bank, N.A. v Liburd, 176 AD3d 464, 464-465 [1st Dept 2019]; Ditech Fin., LLC v Naidu, 175 AD3d 1387, 1389-1390 [2d Dept 2019], lv granted 34 NY3d 910 [2020]). Regardless, even if the notices of voluntary discontinuance constituted affirmative acts revoking the 2009 debt acceleration, we would find that the particular circumstances of this case would render any such revocation ineffectual.
Generally, the death of a party stays all proceedings pending substitution of a legal representative for the decedent (see Adamec v Mueller, 94 AD3d 1212, 1213 n 2 [2012], lv denied 20 NY3d 856 [2013]; Griffin v Manning, 36 AD3d 530, 532 [2007]; Anderson v Gilliland, 245 AD2d 654, 655 [1997]; but see e.g. U.S. Bank N.A. v Esses, 132 AD3d 847, 847-848 [2015]). In the 2009 action, plaintiff filed its notice of voluntary discontinuance roughly 13 months after decedent had passed away, without having sought substitution of a legal representative to act on behalf of decedent's estate (see CPLR 1021; see also SCPA 1002, 1401, 1402 [1] [b]). Thus, as the action was stayed and there was no substitution of a proper defendant, the notice of voluntary discontinuance filed in the 2009 action was without effect.[FN1] As for the notice of discontinuance filed in the 2013 action, plaintiff commenced that action against decedent, despite the fact that she had died more than two years earlier. As a result, the 2013 action was a nullity from its inception and the subsequent notice of voluntary discontinuance was void (see Wells Fargo Bank, N.A. v Baymack, 176 AD3d 905, 906 [2019]; Deutsche Bank Natl. Trust Co. v Faden, 172 AD3d 817, 818 [2019]; Anderson v Gilliland, 245 AD2d at 655).
We similarly find that, under the circumstances of this case, the July 2015 and September 2015 notices did not constitute affirmative acts that would notify decedent's legal representative that the prior debt acceleration was revoked, that the debt was de-accelerated and that the loan was reinstated to installment payments. Irrespective of the content and substance of the July 2015 and September 2015 notices, plaintiff addressed the notices to decedent, who had been deceased for more than four years, and mailed them to the mortgaged property. The record reflects that the September 2015 letter, which was sent by both regular mail and certified mail, was returned as undeliverable.[FN2] Thus, even if the notices clearly and unambiguously expressed plaintiff's intent to revoke the October 2009 debt acceleration and reinstate installment payments, the manner and method in which plaintiff sent the notices and to whom did not effectuate that intent (compare U.S. Bank Trust, N.A. v Rudick, 172 AD3d 1430, 1431 [2019]). In view of the foregoing, we agree with Supreme Court that plaintiff did not engage in an affirmative act that had the effect of de-accelerating the debt (see U.S. Bank N.A. v Creative Encounters LLC, 183 AD3d at 1088-1089). Accordingly, as plaintiff commenced this action after the statute of limitations period had expired, Supreme Court correctly determined that this action was time-barred (see CPLR 213 [4]; Specialized Loan Servicing Inc. v Nimec, 183 AD3d at 964).
Finally, although the named defendants did not appear in the action, we discern no error in Supreme Court's dismissal of the complaint in its entirety, given that the mortgaged property may be an estate asset that is potentially subject to distribution among decedent's successors in interest (see CPLR 3212 [b]). Additionally, plaintiff had notice of the statute of limitations issue and a full opportunity to oppose its application (compare Lanoce v Anderson, Banks, Curran & Donoghue, 259 AD2d 965, 965 [1999]). To the extent that we have not addressed any of plaintiff's remaining contentions, we find them to be without merit.
Lynch, J.P. and Reynolds Fitzgerald, JJ., concur.
Devine, J. (concurring).
Although we agree that defendants are entitled to summary judgment, we write separately to observe that their entitlement to that relief flows solely from what transpired in the 2009 mortgage foreclosure action commenced by plaintiff against Ramona E. Thwaits (hereinafter decedent). Upon commencement of that action in October 2009, plaintiff accelerated the debt and triggered the six-year statute of limitations (see CPLR 213 [4]; Deutsche Bank Natl. Trust Co. v DeGiorgio, 171 AD3d 1267, 1268 [2019]; Bank of Am., N.A. v Luma, 157 AD3d 1106, 1106-1107 [2018]). The action was still pending when decedent passed away in 2011, at which point further proceedings in the action were stayed until a legal representative could be appointed for her (see CPLR 1015 [a]; 1021; Wells Fargo Bank, N.A. v Schubnel, 176 AD3d 1353, 1353 [2019]; Adamec v Mueller, 94 AD3d 1212, 1213 n 2 [2012], lv denied 20 NY3d 856 [2013]). Accordingly, when plaintiff attempted to discontinue the action in 2012 in the absence of a proper substitution for decedent, the attempt was void (see Wells Fargo Bank, N.A. v Schubnel, 176 AD3d at 1354; Deutsche Bank Natl. Trust Co. v Ajibola, 61 Misc 3d 291, 296-297 [2018]; 1 Bergman on New York Mortgage Foreclosures § 4.03 [1] [2020]). Plaintiff made no further effort to substitute a legal representative for decedent or effect a valid discontinuance of the 2009 action.
In short, the commencement of the 2009 action accelerated the balance of the mortgaged debt and, given plaintiff's failure to properly discontinue it, both the action and the acceleration remained in place. Although a valid discontinuance of the 2009 action might not have revoked that acceleration by itself (see U.S. Bank N.A. v Creative Encounters LLC, 183 AD3d 1086, 1088 [2020]; Specialized Loan Servicing Inc. v Nimec, 183 AD3d 962, 964 [2020]), it is difficult to see how plaintiff could give a clear and unambiguous signal "that the previous demand for full payment of the note has been affirmatively revoked" without one (Christiana Trust v Barua, ___ AD3d ___, ___, 2020 NY Slip Op 03095, *3 [2020]; see Federal Natl. Mtge. Assn. v Mebane, 208 AD2d 892, 894 [1994]). Thus, absent a valid disavowal by plaintiff of the 2009 action and its "unequivocal overt act of" acceleration (Albertina Realty Co. v Rosbro Realty Corp., 258 NY 472, 476 [1932]), the statute of limitations continued to run to its expiration in 2015, rendering the present foreclosure action untimely (see Federal Natl. Mtge. Assn. v Mebane, 208 AD2d at 894; Deutsche Bank Natl. Trust Co. v Ajibola, 61 Misc 3d at 296-297). Issues regarding the effect of actions taken by plaintiff outside the context of the 2009 action are therefore academic, and our colleagues' discussion of them are dicta.
Pritzker, J., concurs.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: We also note that, absent substitution of a proper defendant, plaintiff was unable to comply with the service requirements relating to notices of voluntary discontinuance (see CPLR 3217 [a] [1]).

Footnote 2: The record does not reveal whether the July 2015 letter was similarly returned to plaintiff.